A95A1999. AMERIBANK, N.A. v. QUATTLEBAUM.
(469 SE2d 462)

BEASLEY, Chief Judge.

Ameribank makes two arguments for reversal, neither of which is supported by the facts or the law.

Robert Quattlebaum, *Jr.*, a physician, was a guarantor for his son, Robert Quattlebaum *III*, who, together with Isaacson, had given a security deed to Ameribank. Ameribank exercised its power of sale and applied to the superior court to confirm the sale under OCGA § 44-14-161. The confirmation hearing was eventually set for September 12, 1994, and a return of service was filed showing Quattlebaum, *Jr.*, had been served with notice of the hearing and confirmation application on August 19.[1]

The court initially confirmed the sale as to all parties but later set aside that portion of the confirmation order that found Quattlebaum, Jr., had been properly served, ruling that he had not been personally served with notice of the September 12 hearing on Ameribank's confirmation application. It was from this set-aside order that Ameribank sought, and was granted, interlocutory appeal.

1. Ameribank first contends the evidence was insufficient to allow the court to conclude that Quattlebaum, Jr., had not been personally served. Quattlebaum's own affidavit stated he had not been served and had found the papers on his office desk. His receptionist's affidavit stated the deputy had handed her the papers and she put them on Quattlebaum's desk. Two other office staff averred the deputy came in, told the receptionist he needed to give Quattlebaum some papers, waited a few minutes, gave the papers to the receptionist, and left.

The deputy who completed the return of service was deposed. His recollection of service was not strong. Although he stated he personally served Quattlebaum, he could remember no details of the event such as where in the office service took place, exactly how he met Quattlebaum, or who else he talked to. His statements about his routine in serving physicians revealed that he often left papers with office staff and that his superior had misgivings about such service procedures. His first answer to the question of whether he had "any independent recollection of handing Dr. Quattlebaum those documents" was: "Not personally, no." After his deposition, the deputy corrected a portion of his testimony and stated that when he had told a paralegal investigating the service that he had personally served Quattlebaum, he had confused Quattlebaum with another physician.

The court's order makes it clear that the court found the testimony of Quattlebaum and the other affiants more credible than the "equivocal" testimony of the deputy, and the evidence authorized the court's finding of no personal service. See *Hudson v. Williams*, 188 Ga. App. 726, 727 (374 SE2d 220) (1988).

2. Ameribank also contends personal service of notice of the hear-

---

[1] The two borrowers, Quattlebaum III and Isaacson, were served by mail to their attorneys, which attorneys had earlier acknowledged service of the confirmation application and notice of the hearing originally scheduled for June 27.

ing is not required, only actual notice, which the court found Quattlebaum had. Ameribank did not raise the issue in its brief below, contending only that the deputy had personally served Quattlebaum. The court's order does address the matter and concludes personal service is necessary.

The court was correct. OCGA § 44-14-161 (c) requires "that the debtor be personally served with notice of the hearing on the creditor's application at least five days prior thereto. [Cit.]" *Vlass v. Security Pacific Nat. Bank*, 263 Ga. 296, 298 (1) (430 SE2d 732) (1993). The fact that Quattlebaum had actual notice of the hearing does not change the requirement for valid personal service. *Phelan v. Wells Fargo Credit Corp.*, 207 Ga. App. 54, 55 (427 SE2d 46) (1993); see also *Henry v. Hiawassee Land Co.*, 246 Ga. 87, 88 (269 SE2d 2) (1980).

Ameribank argues that *Henry*, upon which *Phelan* relied for its statement about notice, and which *Vlass* cited in support of its statement that personal service is required, was implicitly overruled by *Vlass*, and there is then no requirement for personal service of confirmation documents. The argument completely overlooks the fact that *Vlass* itself repeated the statement that personal service is required. It is true that *Henry* did note that methods of personal service could be found in the Civil Practice Act, OCGA § 9-11-4 (d). *Vlass* avoided the time requirements of OCGA § 9-11-4 by distinguishing a confirmation application under OCGA § 44-14-161 from a "complaint," declaring the confirmation application to be other than a "civil action," and declaring the confirmation application to be outside the coverage of the CPA. *Vlass*, supra at 296-297 (1), 298 (2). The requirement of personal service is clearly stated in *Vlass* and there is no suggestion we should not continue to look to the principles embodied in OCGA § 9-11-4 (d) for an understanding of what personal service means.

The trial court was justified in finding Quattlebaum, Jr., was not personally served, and it correctly concluded that such is required by the law.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 27, 1996.

*J. Keith Berry, Jr.*, for appellant.
*McCorkle, Pedigo & Johnson, David H. Johnson, Inglesby, Falligant, Horne, Courington & Nash, Kathleen Horne*, for appellee.